· THE BOARD OF TRUSTEES OF SCHOOLS, ETC.

*v.*

THE PEOPLE *ex rel.* The Toledo, Wabash and Western Railway Company.

1. MUNICIPAL CORPORATIONS—*limitation of their powers.* Section 5 of article 9, of the constitution of 1848, is a limitation upon the legislative power, and confines the grant of the right of taxation to corporate authorities and for corporate purposes.

2. SAME—*school trustees.* Trustees of school districts are not known to the constitution as municipal corporations which may be vested with power to collect taxes.

3. Though the legislature might confer upon the authorities of school districts power to assess and collect taxes for the purposes of instruction,

it had none to authorize such taxation for entirely different purposes— such as the construction of railroads.

4. The act of levying and collecting a tax by a municipal corporation must have legitimate relation to, and grow out of the purpose for which the corporation is created.

APPEAL from the Circuit Court of Macoupin county; the Hon. H. M. VANDEVEER, Judge, presiding.

This was a petition for a *mandamus* to compel the trustees of schools of township number 7 north of range number 6 west of the third principal meridian, to issue township bonds in aid of the construction of a railroad, in compliance with a subscription previously made in consideration of the passage of its track through their township. The subscription was made after an affirmative vote of the qualified electors of the township, under the provisions of the act of January 23d, 1869, amendatory of the charter of the Decatur and East St. Louis Railway Company, authorizing such subscription—that company having been, before commencement of the suit, consolidated with the relator herein. The railroad company, having complied with the terms of subscription by completing the track through the township, demanded the bonds. The trustees refused to issue. Upon petition *mandamus* was issued out of the circuit court ordering compliance. The trustees filed a demurrer, which being overruled, judgment was entered, followed by appeal to this court.

Messrs. NELSON & ROBY, for the appellant.

Mr. JOHN I. RINAKER, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

A peremptory writ of *mandamus* was awarded by the circuit court, commanding the board of trustees to issue and deliver to the railway company, in aid of its road, certain bonds, in pursuance of a vote of the people.

The county of Macoupin was not under township organization, and the law authorized the trustees of schools to act as judges of elections, and provided for a submission to the voters of the township of the question of subscription to the capital stock of the railroad corporation, and the issue of bonds if the vote was in favor of subscription. Vol. 3, Pri. Laws 1869, 277.

· This is the first instance in which the right of trustees of schools to embark in railroad enterprises has been brought to the attention of this court.

If the legislature had no power to clothe the trustees with the right to subscribe to the stock of the road, then the *mandamus* was improperly awarded. We propose to consider only the question of power, for if it did not exist the case must be determined against the relator.

The act which authorizes the subscription also provides that, after the issue and delivery of the bonds, the trustees of schools shall levy a tax sufficient to meet and defray the interest and principal of the indebtedness incurred.

Section 5 of article 9, of the constitution 1848, provided that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes."

This section was a limitation upon legislative power, and confined the grant of the right of taxation to corporate authorities and for corporate purposes. *Harward* v. *St. Clair Drainage Co.* 51 Ill. 130.

Under our system of State government, counties, townships, cities, towns and villages are but different parts of the machinery which constitutes the State. They have the power to establish, improve and control public highways and streets, and the legislature might confer upon them the power to assess and collect taxes, for purposes intimately connected with their organization and essentially conducive to their existence, and their advancement from a new and sparse settlement to a

progressive civilization.  They must keep pace with the on-ward and rapid progress around them, and secure the means of communication with the markets of the world.  Without this they would perish, and the object of their formation would be thwarted.

In this view alone have the courts been enabled to sustain laws which have allowed such municipal corporations to grant aid to railroads.

But no one has been bold enough to advocate that these corporations should take a step in advance, override the con-stitution and engage in matters wholly disconnected with the object of their creation.  They can not be endowed with power to supply, by means of taxation, the funds necessary for the creation of marble palaces and costly structures, how-ever profitable the investment might prove; they can not en-gage in trade and commerce for the purpose of gain, or adorn and embellish and beautify for the pleasure thereby afforded. Such projects and pursuits appertain to the citizen and pri-vate corporation in the use of their means, but are wholly foreign to the legitimate business and object of a municipal corporation.

With the progress of society, the growth of population and the improvement in the arts and machinery, there has been a vast increase in our commodities.  Thus an absolute neces-sity has been created for the interchange of products and for a safe, cheap and speedy transit.  A State, and consequently counties, townships and cities, which are its general parts, can not exist without improved highways.  As railroads are but improved highways, over, which the public at large have a right of passage, there is great plausibility, if not strict pro-priety, in assuming that the corporations mentioned may properly aid in their construction, and that taxes, thus applied, are for corporate purposes.

Here the analogy ceases.  There is not the remotest similarity between the duties of trustees of schools and the building of a railroad.

Trustees of schools are not named in the constitution. They are not included in the municipalities which may be vested with power to assess and collect taxes, and they have never been authorized, by any public law, to assess taxes for any purpose. The term "townships," in section 5, evidently refers to townships formed under the township organization law, and the legislature could only clothe "school districts," and not school trustees, with the power of taxation.

The trustees of schools were not "corporate authorities" within the meaning of the constitutional provision. At the time of their election they had no power of taxation, and the voters never dreamed that such power would be conferred without their assent. When the constitution said that the corporate authorities of "school districts" might be vested with the right of taxation, it limited the power of the legislature to the corporate authorities designated. There would have been no object in naming "school districts" if the legislature could disregard the direction and substitute other persons, in different districts, corporate authorities. The designation of the particular authorities must exclude all others, or there would be no limitation and the section would be a mere waste of words.

Even if the power had been granted to the school districts, the taxes would not be assessed for a corporate purpose. The constitution restricted the use of the taxes to corporate purposes. In determining the declared purpose we must regard alone the object to be accomplished by the school district. Why was this particular corporation named in the constitution? What was its sole purpose? At first blush every mind must conclude that the end to be attained was the education of the people. The only design of a school district must be to give instruction. It could never have been contemplated that it should embark in railroad and other enterprises entirely foreign from the aim of its existence. The appropriation of money derived from taxation by a school district, to the construction of a railroad, is not for a corporate purpose. Neither

school districts nor trustees of schools have any special interest in the object to be accomplished, and in granting aid of the character under consideration, the principle must ever be regarded that the particular interests to be benefited, or those of a similar kind, must be under the control of the authorities which impose the tax.

The several provisions of the act which authorized the trustees of schools in townships to hold an election, subscribe stock, and issue and deliver bonds to aid in the construction of railroads, and the voters in such township to vote in favor of such subscription, must, then, be declared unconstitutional.

The demurrer to the alternative writ should have been sustained and the peremptory writ of *mandamus* should have been refused.

The judgment of the circuit court is therefore reversed and the proceeding remanded.

*Judgment reversed.*