THE PEOPLE *ex rel.* The Cairo and St. Louis R. R. Co.

*v.*

THE TRUSTEES OF SCHOOLS.

SAME *v.* SAME

1. SCHOOL TOWNSHIPS—*are not municipal corporations.* School townships, being created and continued only for educational purposes, and not for the purpose of exercising any of the functions of government, are not municipal corporations in their nature or purpose.

2. TAXATION—*constitutional limitation for corporate purposes.* The provision in the constitution of 1848, that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be invested with power to assess and collect taxes for corporate purposes," was intended to limit the legislative power in conferring authority on corporate bodies to assess and collect taxes.

3. SAME—*what is a corporate purpose.* A corporate purpose, within the meaning of the constitution authorizing taxation for the same, is a purpose necessary or proper to carry into effect the object of the creation of the corporate body.

4. A tax by a school township or district to aid in the construction of a railroad, or to pay interest on bonds issued in aid of such road, is not

for a corporate purpose, and such power can not, constitutionally, be conferred on such bodies. It seems that such a power can be conferred only upon purely municipal corporations.

5. CONSTITUTIONAL LAW—*old constitution governs in cases arising under it.* Although the constitution of 1848 has been superseded by the present one, still all rights acquired under it, or under laws passed while it was in force, must be tried by and enforced as though it was in full vigor.

APPEAL from the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.

These two cases were proceedings by *mandamus*, on the relation of the Cairo and St. Louis Railroad Company, against the trustees of schools of two different townships, to obtain from the townships the bonds voted by them to be issued to the relator upon a compliance with the conditions imposed in the vote and subscription.

The charter of the company provided that certain school townships might, upon a vote of the people, subscribe to the capital stock of the company, to be paid for in the bonds of the township. A vote was had in the defendant townships, which resulted in favor of subscribing to the stock of the relator, and the subscription was made by the school officers.

After complying with the conditions of the subscription, the relator applied for the bonds, which were refused.

Mr. W. S. SEARLS, for the relator.

Mr. ALBERT N. SPRAGUE, and Mr. JOHN MICHAN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The question is distinctly presented by this record, whether a township, organized for school purposes by the general school law, could, under the constitution of 1848, be empowered to incur a debt for the purpose of subscribing for the stock of a railroad company; whether contracting such a debt, and the levy and collection of taxes to pay the same,

with its accruing interest, can be held a corporate purpose, within the meaning of that instrument.

It is urged by appellees, that Art. IX, Sec. 5, of that constitution prohibited the General Assembly from conferring that power on such a body; that the creation of such a debt, and the levy of such a tax, is not for a corporate purpose. That section provides that, " the corporate authorities of counties, townships, school districts, cities, towns and villages may be invested with power to assess and collect taxes for corporate purposes." This clause was manifestly intended to limit the legislative power in conferring authority on corporate bodies to assess and collect taxes. Without any provision in the constitution on the subject, the General Assembly have. the power to impose taxes as they may choose. They could impose a tax on one species of property, and exempt another. They could fix the mode of ascertaining and the manner of its imposition as they might choose, if the power was not limited, and the mode prescribed in the fundamental law. This was then, most clearly a limitation of legislative power.

Had this restriction not been imposed, the General Assembly could have empowered any of these *quasi* corporations or municipalities to levy and collect taxes for any purpose, whether germane to the object of its organization, or for other purposes. They could have authorized a school district to levy and collect a tax to build a court house, a jail, bridge or other county object; or a school township or district to erect a poor house and maintain the paupers of the county.

These school townships were created and are continued for school purposes alone, and not for municipal purposes. They are only intended to establish schools, and loan and manage the school fund of the township, and pay the teachers of schools taught in their jurisdiction. This is the purpose of their organization. They were not created to exercise any of the functions of government, and hence are not municipal in their nature or purpose, nor are they provided with the officers or the power to exercise the functions of government.

Cities, towns and villages are endowed with such powers and are created and maintained for their exercise. Their very object is to aid in the government of the people. And such is true, in a more limited sense, of counties. But none of these functions are conferred upon school townships or districts, but their creation is purely to aid in the great scheme of accomplishing universal education.

The body of men who framed the constitution must be supposed to have known the meaning of the language employed, and they must have believed that it would be understood in its ordinary sense, and they must have supposed it would receive a reasonable interpretation and a practical application in the administration of government. When, therefore, they used the language "for corporate purposes," they supposed that, if any question arose in the construction of this clause, the legislative, executive or judicial department of the State, which was required to apply its principles, would look and see what was the object of the creation of the body, and limit it to that purpose. They did not, on the one hand, expect that there would be an effort to push the construction to the extent that it would embrace all purposes which might by possibility be brought in the corporate power. Nor yet, on the other hand, to so contract and narrow the construction as to exclude purposes that are embraced in their charters, but which may not be strictly germane to corporations of that character, but that it would be held to authorize the exercise of the power, when the body is created for specified public purposes, although of a mixed character, as, if these school townships had been empowered, in addition to the duties imposed upon them, to locate, open and maintain roads in the limits of their territory, then they could have been empowered to levy a tax for the maintenance of roads, as that would have been a corporate purpose.

But school townships are not invested with such powers over roads, and hence they can not be invested with authority to assess and collect a road tax, nor can it be until one of the

purposes of its existence shall be to repair the roads in the township. To give any other construction would be to abrogate and wholly disregard this provision. To say that, because the General Assembly confers the power to levy a tax for any purpose, the law of the organization of such body is thereby changed, and the tax is for a corporate purpose, would be to render this restriction wholly nugatory. We fail to comprehend the force of such reasoning, and we must give some effect to this constitutional provision. Although that constitution has ceased to be a rule for the guidance of the departments of government, still all laws adopted whilst in force, and all rights acquired under it, must be tried by and enforced as though it was in full vigor.

Had the construction contended for by appellant been what was intended, why not have simply said that these bodies might be invested with power to "assess and collect taxes?" Or why insert any provision on the subject, and let the power of the General Assembly remain unrestricted? That strikes us as the more natural and reasonable course that would have been pursued. Tested by these rules, the subscription by a school township or school district for the stock in a railroad company, or the levy of a tax to raise the money to pay for the same, can not be held to be a corporate purpose. Such a tax in nowise aids or promotes education, for which such bodies are created. And this is the construction given to this clause in the cases of *Trustees of Schools, etc.* v. *Toledo, Wabash and Western Railway Company*, 63 Ill. 299, and *People ex rel.* v. *Dupuyt*, 71 Ill. ——, when the same question was before the court as is presented by this record.

It is, however, urged that townships in counties under township organization have been held capable of subscribing to the stock of a railroad company, and levying a tax for the payment of the same, and that the same rule should be applied to a school township. All of the congressional townships in the State are created *quasi* school corporation, and are vested with limited powers to establish schools and perform a few

functions pertaining to that object.   On the other hand, townships created under the township organization law are invested with numerous and important governmental functions.   They are authorized to locate, open and maintain roads, to construct and repair bridges, to pass by-laws regulating fences, and the conditions under which stock may run at large.   Thus it is seen these bodies are municipal in their character, and school townships have no such power, but the purpose of their creation is entirely different.

It is urged that a liberal construction should be given this clause, and by doing so, school townships may be embraced in its provisions.

It was only by the most liberal construction that counties, cities and towns were held to be embraced in this provision, and it was mainly in deference to the other departments of government in following the construction they had given this clause, and from the fact that these bodies were intrusted with making and repairing roads and bridges, that it was held to be a corporate purpose, but in doing so, construction was pushed to the utmost verge; and to hold that school townships and school districts were embraced, would be to make an immense advance on the construction there given; nor does it follow that, because the courts have given the most liberal construction, and sustained doubtful powers, they will advance farther and embrace and sustain unauthorized powers.   It is not a justifiable rule of interpretation, that, because a very liberal construction has been given, the courts must give one more liberal.   A point must be reached where there must be a limit of power under this clause.

If, because a municipal corporation, created for governmental purposes, may be invested with such powers, it does not follow that some other body, having some of the attributes of a municipal corporation, may be.   It may be, and probably is true, that, to be constitutional, such a power could not be conferred upon any but purely municipal corporations.

It is said that municipal townships were not in existence

when the constitution of 1848 was adopted, and that school townships were. This is true, but that instrument provided for their organization. And knowing that, when organized, they would be municipal, they were as fully embraced in this provision of that article as were counties, cities, towns and villages. In fact, it fully embraces all such corporations created for public purposes that were then in existence, or that should be thereafter created. If a new county, city or town were created, it would fall as fully within the provision as one already brought into existence.

Nor does the argument, that, simply because the construction of a road would promote the interest and advance the prosperity of the township, render it a corporate purpose. It may show that the people of the township had been unfortunate in the county not having adopted township organization, and the township thus become a corporation capable of aiding in the construction of the road. But it does not follow that, because they were not in a position to avail of the constitutional provision, it shall be wholly disregarded, and held for naught.

On a careful review of the former decisions of this court, and the reasons which led to them, in the light of the argument of counsel for appellants, we do not see even the slightest grounds for overruling or modifying the principles of those decisions, but, on the contrary, we are fully satisfied with them, and we must regard them as announcing the settled law of this court.

The judgments of the court below are affirmed.

*Judgments affirmed.*

Mr. JUSTICE BREESE: I have never doubted the authority of the legislature to confer upon school townships the power to take stock in a railroad projected through the school township. Such a work may greatly enhance the value of the school lands belonging to the township, and the dividends on the stock may relieve the people from the payment of taxes to support schools therein.